UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

DOUGLAS R. REIF,                                                              CV 06-1759 TC

                Plaintiff,

      v.                                                       FINDINGS AND RECOMMENDATION

MICHAEL J. ASTRUE,
Commissioner of Social Security,

               Defendant.


COFFIN, Magistrate Judge:

## **INTRODUCTION**

Plaintiff Douglas R. Reif brings this action pursuant to the Social Security Act, 42

U.S.C. § 405(g) ("the Act"), to obtain judicial review of a final decision of the Commissioner of

the Social Security Administration ("Commissioner") denying his claim for a period of disability

under Title II of the Act. For the reasons set forth below, the decision of the Commissioner

should be remanded for further administrative proceedings.

Plaintiff completed high school and training in copier and typewriter repair. Tr. 115. His

1 - FINDINGS AND RECOMMENDATION

past work is as an office machine service technician and sales representative.  Plaintiff contends

that he became disabled by January 1, 2004, when he was 57, due to anxiety, depression, leg

tingle, high blood pressure, short term memory loss, headaches, diarrhea, light-headedness, and a

"stroke like" event.  Tr. 109.

**DISCUSSION**

Plaintiff contends that the ALJ erred by (1)  finding plaintiff not fully credible; (2) posing

an inadequate hypothetical question to the Vocational Expert (VE); (3) denying plaintiff's request

for a supplemental hearing without due process of law; (4) improperly addressing the opinion of

an examining psychologist; (5) failing to credit the opinion of a treating physician; (6) failing to

determine whether his impairments met or equaled in severity a listed impairment; and (7) failing

properly to consider lay evidence.

I. Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical

testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F3d 1035, 1039 (9th Cir 1995).

However, the ALJ's findings must be supported by specific, cogent reasons.  *Reddick v. Chater,*

157 F3d 715, 722 (9th Cir 1998).  Unless there is affirmative evidence showing that the claimant

is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear

and convincing."  *Id.*  The ALJ must identify what testimony is not credible and what evidence

undermines the claimant's complaints.  *Id.*  The evidence upon which the ALJ relies must be

substantial. *Reddick,*  157 F3d at 724.  *See also Holohan v. Massinari,*  246 F3d 1195, 1208 (9th

Cir 2001).  General findings (e.g., "record in general" indicates improvement) are an insufficient

basis to support an adverse credibility determination.  *Reddick* at 722.  *See also Holohan,* 246

2 - FINDINGS AND RECOMMENDATION

F3d at 1208. The ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart*, 278 F3d 947, 958 (9th Cir 2002).

In deciding whether to accept a claimant's subjective symptom testimony, "an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." [Footnote omitted.] *Smolen v. Chater*, 80 F3d 1273, 1281 (9th Cir 1996).

> Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged...." *Bunnell*, 947 F.2d at 344 (quoting 42 U.S.C. § 423 (d)(5)(A) (1988)); *Cotton*, 799 F.2d at 1407-08. The *Cotton* test imposes only two requirements on the claimant: (1) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom.

*Smolen*, 80 F3d at 1282.

To determine whether plaintiff's testimony is credible the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as a reputation for lying or prior inconsistent statements; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Smolen*, 80 F3d at 1284.

A. Step Two of the Five Step Sequential Analysis

Plaintiff argues that the ALJ erred by failing to identify hearing loss and hypertension as severe impairments at step two of the sequential analysis.

At step two, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments. *Bowen v. Yuckert,* 482 US 137, 140-41 (1987). The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of what is "not severe." According to the regulations, "an impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities." 20 CFR § 404.1521(a). Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 CFR § 404.1521(b).

The step two inquiry is a *de minimis* screening device to dispose of groundless claims. *Yuckert,* 482 US at 153-54. An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individuals ability to work." *See* SSR 85-28; *Yuckert v. Bowen,* 841 F2d 303, 306 (9th Cir 1988) (adopting SSR 85-28). Any error by an ALJ in failing to identify an impairment as severe at step two is harmless if the ALJ considers any limitations imposed by the impairment at step four of the analysis. *Lewis v. Astrue,* 498 F3d 909, 910 (9th Cir 2007).

1. Hearing Loss

Plaintiff testified that he has hearing loss, greater in the right ear than the left. He stated that "they both checked out to have quite a loss." Tr. 356. He does not have hearing aids because he cannot afford them. *Id.*

The ALJ found that plaintiff's allegations of hearing loss are not supported by the record. He found plaintiff not entirely credible concerning the intensity, duration, and limiting effects of his symptoms. He noted a March 2004 hearing test showed no significant hearing impairment.

Tr. 213-14. Speech discrimination was 100 percent. *Id.* There is no objective evidence of

hearing loss. The ALJ's determination that hearing loss is not a severe impairment is supported

by substantial evidence and his credibility determinations regarding such are supported by clear

and convincing reasons.

    2. Hypertension

    Plaintiff testified that he is dizzy every day, "usually about three times, in the morning,

afternoon and evening," and that each dizzy spell lasts between a half hour and an hour. Tr. 356.

Plaintiff asserts that his hypertension causes lightheadedness, memory loss, and difficulty finding

words.

    The ALJ noted that plaintiff was taking four medications to control his high blood

pressure. He stated:

> He reported [in September 2003] he was not having any major
> side effects. The claimant asked his physician whether he thought
> he would be successful if he applied for disability for his poorly
> controlled blood pressure, anxiety attacks, and the TIA [transient
> ischemic attack] event a year prior. He reported he loved his job
> but thought if he was not going to live a long time it would be
> better to get on disability. Curtis Climer, M.D., his physician,
> responded that he was not confident the claimant would be able
> to get disability since 'he functions rather normally at the moment.
> The only thing that can be rather bothersome for him are panic
> attacks but he does take medications for it and it is controlled
> fairly well.'"

Tr. 22. The ALJ's conclusion that plaintiff's hypertension did not cause work-related functional

limitations is supported by substantial evidence. The ALJ noted that plaintiff's anxiety disorder

did not restrict his activities of daily living. Plaintiff reported that he performs household chores,

walks, rides his bike, does yard work, and visits with friends and family. Tr. 22, 351, 355.

5 - FINDINGS AND RECOMMENDATION

Plaintiff continued to work part-time during the relevant time period and spent time researching real estate to buy and sell. Tr. 71, 249.[1] In January 2004 plaintiff reported that he was filing for disability, that he had increased anxiety, and felt that he was losing his short term memory. Plaintiff reported switching prescriptions from Elavil to generic Amitriptyline, and had felt groggy in the morning so that he stayed home for an hour or two to wake up enough to go to work. Tr. 220. Dr. Climer recommended tapering off the Amitriptyline and starting Paxil.

In February 2004 the Paxil was increased. Plaintiff reported continued anxiety and panic attacks, but no dizziness or memory loss. In March 2004 plaintiff reported continuing anxiety and problems with comprehension and memory. The Paxil was increased.

In his March 2004 hearing test, plaintiff reported no recurrent dizziness. Tr. 214. In April 2004 plaintiff complained of dizziness and memory loss, but Dr. Climer stated that he "seems to be very much tied up into his trying to [get] disability at this point." Tr. 249. Plaintiff reported working 12 hours per week and spending the rest of his time checking on mobile homes that he might buy and sell, shopping, and other activities. Dr. Climer was unable to detect any actual memory loss, and stated "...I don't think he has any interest in working to any great degree." *Id.*

In May 2004, plaintiff reported "continued trouble with memory loss saying that he forgets supplies that he orders, can't remember text he reads in technical type bulletins from his work, he said he can't sequence well under pressure, can't read a sequential procedure and follow

---

[1] Although not necessary for my findings today, it should be noted that the record contains additional evidence, not cited by the ALJ, that plaintiff was seen by Dr. Climer in November 2003, at which time his hypertension was improved and plaintiff did not complain of any side effects.

it very well. He is convinced that he is still suffering greatly." Tr. 248. However, Dr. Climer

administered a complete mini mental exam on which plaintiff scored 29/30, and Dr. Climer

concluded the plaintiff had no memory loss and the perception of memory loss might be a feature

of his anxiety. *Id.* He increased the dose of Amitriptyline.

In June 2004, plaintiff continued to complain of memory loss, generalized anxiety, and

panic. Tr. 247. Dr. Climer noted that "[i]t certainly isn't obvious talking to him," determined

that plaintiff's hypertension was under control, and prescribed an increase in Paroxetine for

anxiety.

In January 2005, Dr. Climer saw plaintiff for a stomach ailment, but plaintiff did not seek

care for his memory loss, anxiety or dizziness again for a full year, until June 2005. Tr. 246.

Plaintiff complained of symptoms "he attributes to a TIA." *Id.* Plaintiff reported that when he

moved from lying to sitting or sitting to standing, "he describes as the world starting to close a

little bit from the sides. He said he will close his eyes and see 'rivers of blood.'" Plaintiff

reported this happened at least daily, and sometimes as often as three times a day. Dr. Climer

thought it might be a side effect of his medications, and reduced the dose of the Norvasc.

In July 2005, plaintiff moved and commenced care with David Mitchell, M.D. Dr.

Mitchell noted that it was "hard to understand the apparent TIA. His persistent unease and lack

of focus would suggest a permanent damage. Treatable and/or serious processes have apparently

been looked for, and none found....He should stop driving until there is a resolution to this

problem. He apparently is in the process of applying for chronic disability. He does seem to be

chronically disabled." Tr. 255.

Plaintiff did not seek care again before his November 2005 hearing before the ALJ. The

7 - FINDINGS AND RECOMMENDATION

ALJ's determination that plaintiff was not fully credible as to the extent of this limitation was supported by clear and convincing reasons. The ALJ's determination that plaintiff's hypertension did not cause functional limitations is supported by substantial evidence.

II. Step Four

Plaintiff argues that the ALJ erred by not relying on VE testimony that a person could not sustain work if they missed more than two days of work per month. The ALJ determined at step four that plaintiff was able to resume his past work as an office machine servicer. At step four, the ALJ will find a claimant not disabled unless the claimant proves that he is unable to perform his past relevant work. 20 CFR § 404.1520(e). The ALJ is not required to use a VE unless there is an absence of other reliable evidence. *Gomez v. Chater*, 74 F3d 967, 971 (9th Cir 1996). Because the ALJ determined at step four that plaintiff failed to meet his burden of proving that he could not perform his past relevant work, he was not required to rely on the VE testimony.

Plaintiff contends that the ALJ erred by failing to consider that plaintiff's prior work as an office machine servicer required the ability to listen to sounds made by machines in order to locate problems. However, as set out above, the ALJ correctly determined that plaintiff did not establish that he had any limitations arising out of objectively verifiable hearing loss.

III. Due Process

At the hearing, the ALJ stated that he was considering ordering a consultative examination ("CE") and told plaintiff's counsel to "ask [the VE] what ever questions you want, I'm not sure what that CE will tell us and I don't want to avoid doing things today because of that, certainly if you want another hearing after the results of the CE, we can do that but don't hold off today, because of that possibility." Tr. 377. Plaintiff's counsel responded, "Well, the questions, I

8 - FINDINGS AND RECOMMENDATION

would ask would be even more restricted than the hypothetical you just posed. So –...." *Id.* The

ALJ told counsel to "Go ahead," and counsel replied "I don't think there's, I'm going to get mush

[sic] different, it, will probably be the same." *Ibid.*

Plaintiff argues that his due process rights were violated when the ALJ refused to allow a

supplemental hearing to address the post-hearing CE report of A. Michael Leland, Psy.D. Dr.

Leland conducted a neuropsychological screening of plaintiff in December 2005. Tr. 260-75.

Dr. Leland administered the WAIS-III, WMS-III, Reitan Indiana Aphasia Screening Test, Trail-

Making Test parts A and B, Test of Memory Malingering and MMPI-II. He interviewed plaintiff

and reviewed at least portions of his medical records. Dr. Leland determined that plaintiff scored

below the first percentile on Trail-Making Part B. On the MMPI-II, Dr. Leland said:

> Individuals with a similar profile...often are experiencing moderate
> to significant distress characterized by worry, tension, agitation, and
> mild to moderate dysphoria. They are generally anxious about some-
> thing almost all of the time and will frequently develop chronic
> physical ailments that frequently result from psychological stressors
> and conflict. They view life as a significant strain much of the time.
> They may have difficulties concentrating and keeping focused on a
> task or a job. They often feel like they are about to fall apart. They
> tend to frequently engage in excessive rumination and obsessions.
> The profile suggests an individual who has extreme concern over
> their physical functioning and their physical symptoms are typically
> centered around cardiovascular systems and sometimes gastrointesti-
> nal symptoms. His ruminations and obsessions are no longer effective
> in controlling his anxiety.
> . . .
> From a cognitive perspective, I can find no clear and convincing
> evidence that [plaintiff] is unable to work. I believe that the
> greater difficulties that are impacting his general functioning
> and employability are those related to his anxiety. His obsessive
> personality also tends to magnify his anxiety. He appears to

9 - FINDINGS AND RECOMMENDATION

> ruminate on certain aspects and over time it is almost as if he is
> convincing himself that he is more disabled than he actually is.

Tr. 272. Dr. Leland completed a Medical Source Statement of Ability To Do Work-Related

Activities in which he indicated that plaintiff would have slight limitations in the ability to

understand and remember detailed instructions and the ability to carry out detailed instructions.

Tr. 290. Dr. Leland opined that plaintiff would have slight limitations in the ability to respond

appropriately to changes in a routine work setting. Tr. 291.

In February 2006 the ALJ sent Dr. Leland's report to plaintiff's counsel, with a cover letter

stating that she had a right to submit written comments and questions to the author of the report,

and:

/ / /

> You may also request a supplemental hearing at which you
> would have the opportunity to appear, testify, produce
> witnesses, and submit additional evidence and written or oral
> statements concerning the facts and law.  If you request a
> supplemental hearing, I will grant the request unless I receive
> additional records that support a fully favorable decision.  In
> addition, you may request an opportunity to question witnesses,
> including the author(s) of the enclosed report(s).  I will grant
> a request to question a witness if I determine that questioning
> the witness is needed to inquire fully into the issues.

Tr. 187. Plaintiff requested a supplemental hearing "to address [Dr. Leland's] findings," and the

opportunity to submit interrogatories. Tr. 29.  The ALJ responded "As to the supplemental

hearing, we can schedule that once we resolve the issue of your requests to question Dr. Leland."

Tr. 28.

10 - FINDINGS AND RECOMMENDATION

Plaintiff posed interrogatories to Dr. Leland. Tr. 294. Dr. Leland responded in writing. Tr. 296-302. Plaintiff's first question was "What specific functional limitation would be expected from testing at the 9th percentile in digit-symbol coding, the 9th percentile in immediate auditory memory and the 1st percentile in delayed auditory memory?" Dr. Leland responded at length, concluding that:

> With regards to functional limitations with the above scores, keeping in mind that [plaintiff's] performance is not based upon permanent organic brain damage, but rather transitory responses to environmental stressors, one might experience intermittent difficulties with short-term verbal memory such as receiving verbal instructions. A typical compensatory strategy is to carry a notebook and write down instructions or important information.

Tr. 297. Plaintiff's second question was "To what deficiency, if any, is [plaintiff's] repeated inability to remember 'he shouted the warning?' What does this presentation imply by way of functional limitations?" Dr. Leland responded in part:

> A number of factors could impact [plaintiff's] performance including anxiety, obsessive-compulsive behavior, and distractability to name a few. Based upon this singular performance I did not feel that the diagnostic information was indicative of any cognitive disorder attributable to his stroke. I would also not state categorically that one could infer from this test performance that he has an anxiety dis-order. Functionally I would need further evidence of be-haviors to make statements about functional limitations. Such a small sample should not be generalized to a larger class of functional limitations.

Tr. 298. Plaintiff's third question was "Is [plaintiff's] anxiety well-controlled? If not, is he likely to attain good control with pharmacology?" Dr. Leland responded, in relevant part, that he is not

11 - FINDINGS AND RECOMMENDATION

licensed to prescribe medications, and could not comment on whether plaintiff was likely to attain control over his anxiety symptoms with pharmacology. Tr. 299.

Plaintiff's fourth question was "what functional limitations would be expected from this degree of anxiety?" Dr. Leland reiterated that his diagnostic impressions were of Generalized Anxiety Disorder and Obsessive Compulsive Disorder and stated:

> Keeping in mind that anxiety is a response to real or perceived environmental stressors, it is situational in nature. Symptoms wax and wane depending on a variety of circumstances. It is not a constant intense state. Given that, [plaintiff] may experience during moments of intense anxiety difficulties concentrating or attending to stimuli. If he is unable to maintain adequate attention, he may experience problems with storage of memory or in some cases retrieval of information already stored. He may experience a moment of 'going blank' during an acute stressful situational. At other times when he is not under any real or perceived environmental stressors, attention, concentration, and memory are likely to be 'normal.' There were no signs that the difficulties [he] had been experiencing were related to any type of permanent brain damage.

Tr. 300.

The ALJ forwarded Dr. Leland's response to the interrogatories to plaintiff's counsel in a letter dated May 12, 2006, in which he stated "I have secured additional evidence that I propose to enter into the record. I am enclosing that evidence (report from Dr. Leland) for your review." Tr. 27. In his June 2006 decision the ALJ discussed Dr. Leland's opinions and stated "[plaintiff's counsel] did not respond to a May 12, 2006 letter and copy of Dr. Leland's response to her questions. The undersigned finds no need for a supplemental hearing." Tr. 24. Plaintiff contends that he would have used Dr. Leland's report to cross examine the VE. This argument

12 - FINDINGS AND RECOMMENDATION

fails because the ALJ determined at step four that plaintiff was able to return to his prior work, and therefore did not rely upon the VE.

Plaintiff argues that he might have presented medical opinions that identified functional limitations reflected in Dr. Leland's test results different from those identified by Dr. Leland.

The Supreme Court has assumed, but not decided, that a social security applicant has a protectable property interest in unprovided disability benefits. *Richardson v.Perales,* 402 US 389, 410 (1971). The *Perales* Court held that the reports of examining physicians who were not called to testify could provide substantial evidence for a decision denying benefits, even though all witnesses who provided live testimony supported the claim. *Id.* at 402. Due process requires that a social security hearing be "full and fair." *Ibid.*

A claimant is not entitled to unlimited cross-examination at a disability hearing, but rather "such cross-examination as may be required for a full and true disclosure of the facts." *Solis v. Schweiker,* 719 F2d 301, 302 (9th Cir 1983)(quoting 5 USC § 556(d)). The ALJ has discretion to decide when cross-examination is warranted. *See Solis,* 719 F2d at 301 (holding that claimant is entitled to cross-examination where physician is "crucial witness whose findings substantially contradict the other medical testimony").

Plaintiff had the opportunity to propound interrogatories to Dr. Leland. The interrogatories were answered at length. Dr. Leland's findings did not contradict any of the other medical evidence. Accordingly, the ALJ did not abuse his discretion by failing to hold a supplemental hearing. Plaintiff's rights to due process were not violated.

IV. Examining Psychologist

Plaintiff contends that the ALJ failed to resolve inconsistencies between the objective measurements and the conclusions drawn from them by Dr. Leland. Plaintiff argues that Dr. Leland obtained "numerous findings showing significant cognitive loss and difficulty maintaining consistent concentration and focus." Plaintiff's Brief at 20. However, Dr. Leland clearly stated that he could find no cognitive loss attributable to organic brain function, and that difficulties maintaining concentration and focus were transient and situational in nature. There is no evidence of inconsistencies between the objective measurements and the conclusions reached by Dr. Leland.

V. Treating Physician

Plaintiff began treating with David Mitchell, M.D., in July 2005, for a respiratory infection. Tr. 254. In November 2005 plaintiff saw Dr. Mitchell for renal strain. Tr. 308. In December 2005 plaintiff saw Dr. Mitchell when a pharmacy erred in filling his prescription. In April 2006 plaintiff reported leg pain, but x-rays were normal. Tr. 310-11.

On August 5, 2006, Dr. Mitchell wrote "To Whom It May Concern...For several medical reasons (chronic cardiovascular disease, chronic anxiety) [plaintiff] is able to work only eight hours per week." Tr. 319. On September 26, 2006, Dr. Mitchell completed a Mental Residual Functional Capacity form in which he indicated that plaintiff was markedly limited in: (1) the ability to complete a normal workday without interruptions from symptoms; (2) the ability to accept instruction and respond appropriately to criticism; and (3) the ability to maintain

14 - FINDINGS AND RECOMMENDATION

concentration, persistence and pace. Dr. Mitchell opined that these limitations, among others, existed since July 2005. Tr. 327-29.

Plaintiff argues that the Appeals Council erred by failing to review this post-hearing evidence. The Appeals Council did review this evidence, but found it "does not affect the decision about whether you were disabled beginning on or before June 16, 2006." Tr. 6. This is error, as Dr. Mitchell opined that the limitations existed since July 2005. This matter should be remanded so that the ALJ may consider the post-hearing evidence of the treating physician in order to determine the appropriate weight it should be given. This is particularly true because the post-hearing evidence conflicts with other significant evidence and is primarily based on the plaintiff's subjective reporting.

VI. Listed Impairments

Plaintiff contends that the ALJ erred by failing to determine whether his combined impairments meet or equal in severity a "listed" impairment. Plaintiff does not identify which listing he believes he meets. Plaintiff offers no argument nor points to any evidence as to how his impairments meet or equal a listed impairment. The ALJ did not err in failing to find that plaintiff's impairments met or equaled a listed impairment. *Lewis v. Apfel,* 236 F3d 503, 514 (9th Cir 2001).

VII. Lay Witness Testimony

Plaintiff argues that lay witness testimony is consistent with Dr. Leland's objective test results. In his Reply Brief, plaintiff contends that "Leland's objective findings mirror closely the

15 - FINDINGS AND RECOMMENDATION

observations of Crawford, friend and prior employer, and this leads to a third assignment of error.
Crawford explained thoroughly [plaintiff's] job difficulties and why he was no longer profitable."
The ALJ was required to address these close similarities and give well articulated reasons for
rejecting them." Plaintiff's Reply Brief at 6.  However, the burden of proof is on the plaintiff,
and he had the opportunity to question Dr. Leland, through interrogatories, on this issue but
failed to do so.

In February 2004, Stan M. Crawford completed a Third Party Function Report in which
he stated that he had known plaintiff since 1968 as a friend and employer.  Crawford stated that
plaintiff's anxiety had become progressively worse, and that he was forgetful.  Tr. 140.  Crawford
wrote that plaintiff's anxiety had made it increasingly difficult for plaintiff to acquire formal
training, and that he had memory and concentration issues that made it difficult to master and
retain new material.  Tr. 142.  Plaintiff was late to work and left early, and had no social
activities.  Crawford stated that plaintiff became anxious at any kind of change.  Tr. 143.

In a statement made apparently in December 2004, Crawford said that plaintiff's
condition continued to decline in all respects, and that it affected plaintiff's ability to diagnose
problems and complete repairs.  Tr. 106.

Crawford testified at the November 2005 hearing that plaintiff had "a very, very good
work ethic." Tr. 366.  Crawford said that plaintiff had good relationships with customers, was
efficient, and did good work.  As the business machine industry changed, it became necessary to
travel for training.  Crawford testified that plaintiff's anxiety made it nearly impossible for him to

16 - FINDINGS AND RECOMMENDATION

travel out of town, and it became difficult for him to eat a meal with his co-employees. Plaintiff would eat alone, and compensated for lack of formal training by self study. Tr. 366-67.

Eventually, according to Crawford, plaintiff became an independent contractor, working for Crawford's company and two other companies. Over time, plaintiff's anxiety about working with new customers and taking direction from other companies caused him to withdraw from working for anyone but Crawford's company. Tr. 368. It appeared to become more and more difficult for plaintiff to work a full day or to solicit new business.

In 2002 or 2003, a salesman who worked closely with plaintiff retired, and Crawford saw a serious decline in plaintiff's ability to work. Tr. 370. In the two years prior to the hearing, Crawford said, he was no longer able to depend on plaintiff to complete his work. By July 2005, plaintiff no longer came to work at all. Tr. 372. Plaintiff's hygiene and physical appearance were a distraction. Out of friendship, Crawford's company continued to pay for plaintiff's health insurance. Tr. 373. Crawford stated that plaintiff's speech patterns and greetings had become virtually identical, and that he took increasing amounts of time to accomplish a task. Tr. 373.

The ALJ found that Crawford's testimony was contradicted by the treatment record, noting the psychological testing and Dr. Climer's report in September 2003 that plaintiff's anxiety was well controlled. Tr. 25. The ALJ cited Dr. Climer's inability to find evidence of memory or concentration impairment. The ALJ noted that despite his allegations of debilitating anxiety, plaintiff has not sought treatment other than the medications prescribed by his primary care physicians. *Id.* However, this matter should be remanded so that the ALJ may reconsider the lay

17 - FINDINGS AND RECOMMENDATION

evidence in light of the post hearing evidence of treating physician Mitchell.

## **RECOMMENDATION**

For the reasons stated above, the Commissioner's decision  should be remanded for

further administrative proceedings consistent with these findings and final judgment in this court

should be entered pursuant to Sentence Four of 42 USC 405(g).  In particular,  the ALJ should

consider the post hearing evidence of treating physician Mitchell in general.   The ALJ shall also

specifically reconsider the lay evidence in light of the post hearing evidence of treating physician

Mitchell.

Dated this ꓶ day of ~~January~~ Feb, 2008.

THOMAS M. COFFIN
United States Magistrate Judge